[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 29, 2009
THOMAS K. KAHN
CLERK

_____

No. 07-14101
Non-Argument Calendar

_____

D. C. Docket No. 07-20155-CR-DMM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CARLOS GRANDA,

Defendant-Appellant,

PAULINO GRANDA,

Defendant.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(September 29, 2009)

Before HULL, PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

Carlos Granda appeals his convictions and sentences totaling 360 months' imprisonment for conspiracy to possess with intent to distribute five kilograms or more of cocaine, and attempt to do the same, in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(A) and 18 U.S.C. § 2; conspiracy to interfere with commerce by threats or violence, and attempt to do the same, in violation of 18 U.S.C. §§ 1951(a), (b)(1), and (b)(3) and 2; attempted carjacking, in violation of 18 U.S.C. §§ 2119 and 2; and conspiracy to carry a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) and (o).[1]  Carlos Granda's convictions arose out of his involvement in a reverse sting operation, in which his brother, Paulino Granda, planned with an undercover detective and confidential informant to rob a tractor-trailer carrying more than 70 kilograms of cocaine.  To this end, Paulino Granda recruited Carlos Granda, among others.

On appeal, Granda argues that the district court erred in denying his motion for judgment of acquittal as to all drug-related counts of conviction because the evidence was insufficient to prove that he had knowledge that cocaine was the object of the robbery conspiracy.  He also argues that the government committed prosecutorial misconduct in objecting to defense counsel's statement during

---

[1]  While the instant appeal initially concerned both Paulino and Carlos Granda, we dismissed Paulino Granda's appeal for failure to file a corrected brief as required by 11th Cir. R. 42.

closing argument that there was no record evidence that Carlos Granda had ever been convicted of a crime, and that the district court plainly erred in sustaining the objection. Finally, he argues that the district court clearly erred in denying him a minor-role reduction and in enhancing his sentence for reckless endangerment.

## I.

On appeal, Carlos Granda does not dispute the existence of a conspiracy to commit cocaine robbery. Rather, he argues that his convictions with a cocaine nexus must be reversed because the evidence was insufficient to prove that he had knowledge of the nature of the robbery, i.e. that the robbery was a cocaine robbery. He relies heavily on our opinion in Martinez v. United States, 83 F.3d 371 (11th Cir. 1991).

"We review the denial of a defendant's motion for acquittal de novo." United States v. Ryan, 289 F.3d 1339, 1346 (11th Cir. 2002). In reviewing the sufficiency of the evidence, we consider "the evidence in the light most favorable to the government." United States v. Garcia, 405 F.3d 1260, 1269 (11th Cir. 2005). We make all reasonable inferences and credibility choices in favor of the government and the jury's verdict. Id. We must affirm "unless, under no reasonable construction of the evidence, could the jury have found the [defendant] guilty beyond a reasonable doubt." Id. "The evidence need not exclude every

3

hypothesis of innocence or be completely inconsistent with every conclusion other than guilt because a jury may select among constructions of the evidence." United States v. Bailey, 123 F.3d 1381, 1391 (11th Cir. 1997).

To support a conspiracy conviction under § 841, the government must establish beyond a reasonable doubt that (1) a conspiracy existed, (2) the defendant had knowledge of it, and (3) he knowingly and voluntarily joined it. United States v. Thompson, 422 F.3d 1285, 1290 (11th Cir. 2005). "The government may show participation in the conspiracy by circumstantial evidence, if not by direct evidence, and it need prove only that [the defendant] knew the general nature and scope of the conspiracy." United States v. Pineiro, 389 F.3d 1359, 1368 (11th Cir. 2004) (citation omitted). For instance, it is not necessary that the government prove that the defendant knew that he was involved with cocaine, but only that the defendant had knowledge that he was dealing with a controlled substance. United States v. Mejia, 97 F.3d 1391, 1392-93 (11th Cir. 1996); but see Martinez, 83 F.3d at 373-74 (reversing the conviction of an alleged co-conspirator to a drug theft because the government failed to present evidence that the individual, who had been excluded from discussions concerning the conspiracy, knew "the true object of the burglary was cocaine").

4

The cumulative effect of the circumstantial evidence at trial suffices to establish Granda's knowing participation in the narcotics trafficking conspiracy. In the instant case, the existence of a conspiracy to commit cocaine robbery is not disputed, but rather the issue is Granda's knowledge that cocaine was the object of the robbery. Granda's reliance on <u>Martinez</u> is misplaced because the evidence that Granda prepared flex cuffs, directed Fidel Granda to proceed to the service station, and made and received numerous telephone calls while he drove around the site of the robbery, suffices to distinguish the instant case from <u>Martinez</u>. <u>Martinez</u>, 83 F.3d at 373-74 (showing that Gomez was excluded from all discussions with the undercover detective and confidential informant).

Moreover, the cumulative effect of the circumstantial establishes Granda's knowing participation in a narcotics trafficking conspiracy. First, both Yosvany and Fidel Granda, who are Paulino Granda's relatives and served less significant roles in the conspiracy than that of Granda, testified that they knew that they were participating in a cocaine robbery. Granda correctly states that while Paulino Granda told both Yosvany and Fidel Granda of the plan to commit a cocaine robbery, there is no evidence that Paulino Granda specifically told him that cocaine was the object of the robbery. However, given Granda's familial relationship with Paulino, Yosvany, and Fidel Granda, the jury could have inferred that Paulino

5

Granda had disclosed the full extent of the conspiracy to him. Also, the jury could have reasonably inferred that Granda shared "a common purpose" with the other conspirators from his presence at the meeting at his parents' home and actions in furtherance of the conspiracy. In addition, Fidel Granda testified that he understood that Granda planned to participate in the cocaine robbery. While Granda questions the reliability of Fidel Granda's testimony because Fidel Granda was cooperating with the government, the jury was permitted to credit Fidel Granda's testimony, unless it was "unbelievable on its face." Rivera, 775 F.2d at 1561.

Further, the jury was presented with evidence that (1) Paulino Granda specifically identified Granda in discussing the drug theft with Gamez; (2) Granda was present during two-drug related meetings, one of which involved explicit discussion of marijuana; (3) Granda had telephone contact with various members of the conspiracy during critical times in planning and executing the drug theft; (4) vague references to the cocaine robbery were made to Granda or in his presence; (5) and Granda was apprehended within close proximity to the scene of the robbery. See Mejia, 97 F.3d at 1392-93 (stating it was sufficient to show that the defendant had knowledge that he was dealing with a controlled substance). While these facts are also consistent with Granda's argument that he knowingly

6

participated in a robbery, but not a cocaine robbery, this Court has repeatedly held that a jury is permitted to choose among constructions of the evidence. See e.g., United States v. Lyons, 53 F.3d 1198, 1202 (11th Cir. 1995). Therefore, considering the totality of the circumstances, the jury could have reasonably inferred that the appellant was a knowing participant in a drug conspiracy, and this Court should affirm his convictions. Thus, the district court did not err in denying Granda's motion for judgment of acquittal, and we affirm in this regard.

II.

Granda identifies as prosecutorial error the government's objection to defense counsel's statement during closing argument that the record showed that Granda had never been convicted of a crime. Granda acknowledges that no evidence of his criminal record or lack thereof was admitted at trial.

Generally, we review de novo claims of prosecutorial misconduct, which are a mixed questions of law and fact. United States v. Eckhardt, 466 F.3d 938, 947 (11th Cir. 2006). However, objections not raised before the district court are subject to review for plain error. United States v. Foley, 508 F.3d 627, 637 (11th Cir. 2007). "For there to be plain error, there must (1) be error, (2) that is plain, (3) that affects the substantial rights of the party, and (4) that seriously affects the fairness, integrity, or public reputation of a judicial proceeding." Id. (quotation

7

omitted).  An error is plain only if it is "obvious or clear under current law."

United States v. Williams, 469 F.3d 963, 966 (11th Cir. 2006).

"To find prosecutorial misconduct, a two-pronged test must be met: (1) the remarks must be improper, and (2) the remarks must prejudicially affect the substantial rights of the defendant."  United States v. Eyster, 948 F.2d 1196, 1206 (11th Cir. 1991).  As to the first prong, we have held that "[a]rgument to the jury must be based solely on the evidence admitted at trial" and that "[a]ttorneys are forbidden from saying anything to the jury to imply that evidence supporting their position exists but has not been introduced at trial."  United States v. Martinez, 96 F.3d 473, 476 (11th Cir. 1996); Brooks v. Francis, 716 F.2d 780, 787 (11th Cir. 1983).  Regarding the second prong, improper comments are prejudicial when they "so infect the trial with unfairness as to make the resulting conviction a denial of due process."  Eyster, 948 F.3d at 1206  (quotation and alteration omitted).  Any potential prejudice "may be rendered harmless by curative instructions to the jury." United States v. Simon, 964 F.2d 1082, 1087 (11th Cir. 1992) (quotation omitted). "A district court does not abuse its discretion by prohibiting counsel from making arguments that are unsupported by the record."  United States v. Martinez, 486 F.3d 1239, 1247 (11th Cir. 2007).

Because the government's objection during closing argument was based on defense counsel's reference to facts not established by evidence, it was not improper, and, thus, the government did not commit prosecutorial misconduct. Furthermore,  the district court did not plainly err in sustaining the objection. Accordingly, we affirm in this regard.

III.

Finally, Granda challenges the district court's denial of his request for a minor-role reduction, pursuant to U.S.S.G. § 3B1.2, and its application of the enhancement for reckless endangerment, pursuant to U.S.S.G. § 3C1.2,  on grounds that the factual findings upon which the district court relied are clearly erroneous

We review a district court's factual findings for clear error and its application of the Guidelines to those facts de novo.  United States v. Kinard, 472 F.3d 1294, 1297 n.3 (11th Cir. 2006).  We review a district court's decision on whether to grant a minor-role reduction for clear error. United States v. Rodriguez De Varon, 175 F.3d 930, 937 (11th Cir. 1999) (en banc).

**U.S.S.G. § 3B1.2(b)**

Section 3B1.2 authorizes a district to reduce a defendant's offense level by two levels if the defendant was a "minor participant" in the crime.  U.S.S.G.

9

§ 3B1.2(b). A minor participant "means any participant who is less culpable than most other participants, but whose role could not be described as minimal." Id., comment. (n.5); De Varon, 175 F.3d at 939. The defendant has the burden of establishing his role by a preponderance of evidence. De Varon, 175 F.3d at 939. For a sentencing court to determine whether to grant a minor-role reduction, it considers two principles. Id. at 940. First, the court must measure the defendant's role against the relevant conduct for which he is being held accountable. Id. The second prong of the minor role reduction analysis permits a district court, "where the record evidence is sufficient . . . [, to] measure the defendant's conduct against that of other participants in the criminal scheme attributed to the defendant." Id. at 934. The "district court has considerable discretion in making this fact-intensive determination." United States v. Boyd, 291 F.3d 1274, 1278 (11th Cir. 2002).

The district court did not clearly err in finding that Granda was not entitled to a minor-role reduction because the record supports the district court's findings that Granda played an important role in his relevant conduct and that he was more culpable than several of his co-conspirators. Because the first prong of the minor-role inquiry concerns Granda's role in the conspiracy in relation to the conduct attributed to him at sentencing, Granda's role should be measured in view of his

involvement in the attempted "drug rip off of 70 kilograms" of cocaine. De Varon, 175 F.3d at 941. During sentencing, the district court denied Granda's request for a minor-role reduction because it found that Granda's communications showed that he played an integral role in planning the conspiracy, his involvement in the marijuana deal was a motivating factor in the conspiracy, and he was within close proximity to the scene of the robbery. The court also found that Granda "played a far different role" in the conspiracy than Fidel and Yosvany Granda, who were "late-comers" to the conspiracy. These findings have support in the record, which shows that (1) unlike Fidel and Yosvany Granda, Granda made and received numerous telephone calls from occupants of the black SUV after 11:00 p.m. on the night of the robbery; (2) Paulino Granda needed money to satisfy an outstanding debt to his marijuana supplier, and Granda had some connection to the marijuana transaction; (3) Granda was apprehended within close proximity to the scene of the robbery; and (4) Paulino Granda approached Yosvany Granda about participating in the cocaine robbery on February 21, 2007, and Fidel Granda was not assigned any responsibility in executing the plan until after 10:00 p.m. on February 22, 2007. These findings demonstrate that Granda played an important role in his relevant conduct and that he was more culpable than Fidel and Yosvany Granda. De Varon, 175 F.3d at 944. Thus, we affirm in this regard.

11

**U.S.S.G. § 3C1.2**

Section 3C1.2 of the Guidelines authorizes a two-level increase "[i]f the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." U.S.S.G. § 3C1.2. The Guidelines define recklessness, under § 3C1.2, as "a situation in which the defendant was aware of the risk created by his conduct and the risk was of such a nature and degree that to disregard that risk constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation." U.S.S.G. §§ 2A1.4, comment. (n.1), 3C1.2, comment (n.2).

Because the record supports the district court's findings that Granda tried to evade police and that he created a dangerous situation by colliding his vehicle into a police car, the district court did not clearly err in enhancing Granda's sentence pursuant to § 3C1.2, and we affirm his sentence in this regard.

## Conclusion

Based on our review of the record and the parties' briefs, Carlos Granda's convictions and sentences are affirmed.

**AFFIRMED**.[2]

---

[2] Granda's request for oral argument is denied.